UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARC A. MANZO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:20 CV 1527 DDN |
| ) | |
| ST. CHARLES COUNTY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM AND ORDER

This matter is before the Court upon the amended complaint of self-represented plaintiff Marc Manzo. ECF No. 9. The Court previously granted plaintiff *in forma pauperis* status and reviewed his complaint under 28 U.S.C. § 1915. ECF No. 6. Based on that review, the Court directed plaintiff to file an amended complaint on a Court-provided form and in compliance with the Court's instructions. Plaintiff filed his amended complaint on March 15, 2021. As discussed below, after reviewing the amended complaint under § 1915, the Court will now order the Clerk of Court to issue process or cause process to be issued as to plaintiff's municipal liability claim against defendant St. Charles County, and as to plaintiff's deliberate indifference claims against defendants Unknown Duty Officer, Unknown Control Room Officer, and Unknown Wellness Check Officers.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed *in forma pauperis* if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes

the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

**Background**

Self-represented plaintiff is currently an inmate at the Federal Correctional Institution in Seagoville, TX. Plaintiff brought this 42 U.S.C. § 1983 action based on an incident that occurred while he was being held at the St. Charles Detention Center in St. Charles, Missouri in May 2017. According to plaintiff, he suffered cruel and unusual punishment when defendants violated their duty to protect him from violence at the hands of prison officials and other inmates. In his initial complaint, plaintiff named eleven defendants in both their individual and official capacities. The complaint asserted two counts of Eighth and Fourteenth Amendment violations due to "negligence,

deliberate indifference, endangerment, malpractice, malfeasance, misfeasance, and cruel and unusual punishment," that resulted in "loss of eye sight" in plaintiff's left eye and post-traumatic stress disorder. ECF No. 1 at 1, 27.

Plaintiff's initial complaint was extensively reviewed by the Court, pursuant to 28 U.S.C. § 1915(e)(2), in an Order issued on February 10, 2021. ECF No. 6. The Court found many pleading deficiencies and that the complaint was defective for not being filed on a court form as required by the local rules. *See id.* at 12-20. However, because plaintiff is self-represented and the allegations of his complaint were very serious, the Court provided instructions for filing an amended complaint to attempt to cure the pleading deficiencies. After being granted an extension of time, plaintiff filed his amended complaint on March 15, 2021.

## The Amended Complaint

Plaintiff's amended § 1983 complaint is brought against four defendants: (1) St. Charles County; (2) Unknown Duty Officer;[1] (3) Unknown Control Room Officer;[2] and (4) Unknown Wellness Check Officers. ECF No. 9 at 1-4, 7-10. Plaintiff names defendant County in its official capacity and individual Officer defendants in their individual capacities. *Id.* at 2-4.

Plaintiff alleges that he made "multitude" pleas to St. Charles Detention Center staff for protective custody, but that his requests were "summarily ignored" and he was "targeted" by staff upon arrival. *Id.* at 5. According to plaintiff, beginning at his "initial intake … he informed intake officers that he was a sex offender … and that he was working on his legal defense and would be subject to further risk should he be placed in a location (housing unit / cell) where other inmates

---

[1] Plaintiff describes "Defendant 2" as "Unknown Name, Duty Officer working on May 20, 2017 … assigned to Pod 'Bubble' with authority to assign cell changes." ECF No. 9 at 3. The Court will direct the Clerk of Court to update the docket sheet to reflect that this defendant is one, singular "Unknown Duty Officer."

[2] Plaintiff describes "Defendant 3" as "Unknown Name, Control Room Officer working night shift May 20-21 overnight [and] responsible for answering the 'Call Box' distress call." ECF No. 9 at 3. The Court will direct the Clerk of Court to update the docket sheet to reflect that this defendant is one, singular "Unknown Control Room Officer" and not multiple "Unknown Officers and Control Room Officers."

may have access to view the details of his case on [] documents [in his possession], unless he and his documents were placed in a protective environment." *Id.* Plaintiff was eventually placed in a cell with a "known violent inmate who, after only a day or two, would subsequently attack the Plaintiff exactly … as he had warned staff would likely happen." *Id.*

Plaintiff states that defendant Unknown Duty Officer moved him "from a safer environment to a dangerous environment" when he assigned plaintiff to a cell with "Inmate Green" on May 20, 2017. *Id.* Two days later, on the evening of May 22, 2017, plaintiff was "severely beaten about the head" by Green "multiple times … while locked within the holding cell," with the abuse going "late into the evening and after midnight." *Id.* at 5, 8-9. At some point during the beating, plaintiff "managed to reach the 'call box' within the cell to notify the Control Room Officer … working the all-night shift, that he was being attacked and in need of immediate rescue and intervention." *Id.* at 9. Defendant Unknown Control Room Officer ignored plaintiff's plea for emergency assistance. *Id.* at 5. Instead, plaintiff was "reprimanded … for abusing the 'call box' privilege." *Id.* at 6.

Plaintiff received "additional beatings by Inmate Green" and then he sat on his bunk, facing the locked door (which had a glass viewing port), and waited for the wellness guard to make his rounds. Unknown Wellness Check Officer defendants made rounds "every 30 minutes with a flashlight" peering into the cell through the glass window "to see if any inmates might be in distress and require immediate intervention." *Id.* Plaintiff was "sitting up facing the window all night … holding a blood-soaked rag to his face and nose to show the Wellness Guard that [he] was injured." *Id.* According to plaintiff, the Unknown Wellness Check Officers flashed their lights "into the cell and directly at the Plaintiff on every round throughout the entire night" yet they "refused to inquire, to unlock the door, to remove the Plaintiff, or to include the observed injuries in any records." *Id.*

Plaintiff blames St. Charles County's "failed policy and procedure" for the attack by Green, which could have been avoided. *Id.* at 5. Plaintiff alleges that the County has an unconstitutional policy "that gave employees the unencumbered authority to place a vulnerable inmate into harm's way after receiving verbal notification of such danger by the inmate." *Id.* at 7. Plaintiff also asserts that the County's "failed policy and procedure" are responsible for the "neglect to intervene or protect" plaintiff from the beating by Green. *Id.* at 6. Plaintiff argues that the County "failed to provide proper policy, protocols, and training for its Detention Center personnel," thus violating plaintiff's "Eighth Amendment right to be protected." *Id.* at 6. According to plaintiff, the County exhibited deliberate indifference in its failures to: implement strict guidelines; properly train employees; create safety protocols and enforce a distress call policy; require removal of a bloody inmate from his cell; and establish a sex offender protective custody holding pod. *Id.* at 7.

Plaintiff alleges that defendant Unknown Duty Officer exhibited deliberate indifference and negligence to plaintiff's safety when he assigned plaintiff to a cell with Green. *Id.* at 5. On May 20, 2017, plaintiff was called to his pod's duty station where Unknown Duty Officer used his "discretion" to reassign plaintiff to a cell with Inmate Green. *Id.* at 8. Plaintiff "vehemently objected" and presented his safety concerns of "retribution and violence against him" to Unknown Duty Officer, who refused to "investigate the risk," "contact his supervisors," or "monitor the circumstance and seek an alternative [cell] assignment." *Id.* According to plaintiff, Unknown Duty Officer violated plaintiff's Fourteenth Amendment right to be free of cruel and unusual punishment by placing plaintiff in "harm's way" after being warned of danger by failing: "to use his discretion to protect" plaintiff; "to follow protocols to safeguard the inmate environment;" to properly "assess the Plaintiff's vulnerabilities;" and to "arrange an alternate living space" for plaintiff. *Id.*

As to defendant Unknown Control Room Officer, plaintiff asserts that he acted with deliberate indifference when he ignored plaintiff's plea for help and failed to intervene. *Id.* at 5. According to plaintiff, the following exchange occurred through the cell's call box:

> Plaintiff: "I need to get out of here!"
> Unknown Control Room Officer: "What do you mean? Why?"
> Plaintiff: "He is beating me up!"
> Unknown Control Room Officer: "I'm not doing anything, and you are not going anywhere."

*Id.* at 9. After this exchange, plaintiff states that he was further beaten by Green "into the night." *Id.* Plaintiff alleges that Unknown Control Room Officer neglected his duties and exhibited deliberate indifference when he violated plaintiff's Fourteenth Amendment rights by endangering plaintiff's safety and well-being, subjecting plaintiff to cruel and unusual punishment, and failing to follow protection procedures and protocols. Plaintiff asserts that his injuries would not have been as severe if Unknown Control Room Officer had intervened when he should have. *Id.*

As to defendant Unknown Wellness Check Officers, plaintiff claims they acted with deliberate indifference when they were unwilling to protect plaintiff "from harm from another violent or imposing inmate," thus violating plaintiff's right to be free from cruel and unusual punishment. *Id.* at 6. Plaintiff describes these defendants as the "Wellness Check Officer(s)" who worked "between the evening of [May] 22nd and the morning of the 23rd [2017]," "during the midnight to 6:00AM shift." *Id.* at 10. He states their duties as making "rounds every Thirty (30) minutes peering into each cell using a flashlight to assess that inmates are safe, compliant, and not in need of attention should one experience an emergency or be unable to communicate said emergency." *Id.* According to plaintiff, if these defendants had followed "training and protocols," they would have "immediately" noticed plaintiff "holding a blood-soaked rag to his face and nose" and would have intervened or at least inquired into plaintiff's physical state. *Id.* Plaintiff alleges there were 10-12 rounds made that night where Unknown Wellness Check Officers should have

responded. Their inaction "exacerbated the beatings" by Green and violated plaintiff's constitutional rights. *Id.*

The beating plaintiff suffered at the hands of Green resulted in "significant injuries to his eye" and "extensive damage to his nose, eyes, and face." *Id.* at 5, 9. His eye injury consists of a "detached retina and other ocular damage" and has "currently resulted in total loss of sight in one eye … with a dim prospect of recovery." *Id.* at 5, 11. Plaintiff summarizes the medical care received for his eye injury as follows:

> This Plaintiff has been diagnosed and treated by one outside eye specialist physician. A procedure was initiated to place fluid/gas inside the eye to hold pressure with an understanding that the fluid/gas would be removed within a year. To date, this Plaintiff has never been returned for this correction in almost three years, thus resulting in permanent damage.

ECF No. 9 at 14.

Medical record exhibits[3] attached to the amended complaint indicate that plaintiff was diagnosed with a retinal detachment on December 13, 2017, while incarcerated at FCI Seagoville. ECF No. 9-1 at 2. The treating doctor recommended that plaintiff see a retina specialist "ASAP urgent." *Id.* Five days later, plaintiff had surgery at a local hospital to repair the detached retina. ECF No. 9-2. The surgery resulted in "no complications" and left plaintiff "in excellent conditions." *Id.* It appears plaintiff did have a second procedure on his eye, five months later, which achieved "100% attachment of the retina" with "no complications." ECF No. 9-3. Plaintiff attached additional exhibits which he described as "each providing verification of eye injury." ECF No. 9 at 11 (citing "Attachments N, O, and P"). However, these exhibits appear to be general medical information from internet sources and not specific to plaintiff's eye injury. *See* ECF Nos. 9-4 through 9-6. There are no medical records indicating the current status of plaintiff's eye.

---

[3] The Court will treat these attachments as part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes").

Plaintiff also included exhibits which he refers to as showing a "pattern of abuse." ECF No. 9-7 at 1. The two included newspaper articles discuss civil rights lawsuits filed by former inmates against the St. Charles County Jail and employees. *See id.* at 2-3.

Finally, plaintiff alleges that he warned Detention Center employees of the risk of danger to himself both "verbally and electronically." ECF No. 9 at 7. Plaintiff attached a copy of a complaint he submitted through the Jail kiosk system with a "Supervisor" on May 24, 2017 – two days after the alleged attack by Green. ECF No. 9-7 at 4. The complaint states in part:

> In F-pod I was assaulted after being locked down for the night then forced to see my paperwork then extorted for my commissary under the threat of exposure and further beatings.
> I was moved, yes, but only after my initial pleas for a single man cell were either denied or ignored altogether, and resulted in an assault on me. …
> I requested protective custody the day I arrived in this house of horrors and was ignored then. …
> I am in fear of my safety and life and no one can even be bothered to do the right thing about it.

*Id.*

For relief, plaintiff seeks compensatory and punitive damages totaling ten million dollars. ECF No. 9 at 12.

## Discussion

Liberally construing the allegations of the self-represented amended complaint, the Court finds that plaintiff states valid claims for relief against all defendants. As such, the Court will direct the Clerk of Court to issue process or cause process to issue on the amended complaint against defendant St. Charles County for municipal liability and against defendant Officers in their individual capacities for violations of the Eighth Amendment.

### I. Municipal Liability – Defendant St. Charles County

A local governing body such as St. Charles County can be directly liable under 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). In order to prevail on this type

of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018); *see also Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training").

To state a viable § 1983 claim against the County for failure to train and supervise, plaintiff must plead facts sufficient to show that (1) the County's training and supervision practices were inadequate; (2) the County was deliberately indifferent to the rights of others in adopting these training and supervision practices, and the County's failure to train and supervise was a result of deliberate and conscious choices it made; and (3) the County's alleged training and supervision deficiencies caused plaintiff's constitutional deprivation. *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013). Plaintiff may establish that the County had notice of a deficiency in its procedures in one of two ways: (1) "notice may be implied where failure to train officers or employees is so likely to result in a violation of constitutional rights that the need for training is patently obvious;" or (2) "where the need for additional training may not be obvious from the outset, [] a pattern of constitutional violations could put the municipality on notice that its employees' responses to a regularly recurring situation are insufficient to protect the constitutional rights of its citizens." *Thelma D. By and Through Delores A. v. Bd. of Educ. of City of St. Louis*, 934 F.2d 929, 934-35 (8th Cir. 1991) (citations omitted).

In this case, plaintiff alleges that defendant St. Charles County's Detention Center policies – including policies of cell assignment, call-box response, and response to injured inmates during wellness checks – failed to adequately protect plaintiff from assault by a fellow inmate, resulting

in extensive and preventable injury to plaintiff and violating his constitutional rights. In addition, plaintiff asserts that the County failed to properly train and supervise Detention Center employees to prevent injuries like those he suffered.

In support of these claims, plaintiff provides evidence of deficient supervision and training practices with deliberate indifference to the constitutional rights of others, that these training practices were the product of the County's deliberate and conscious choices, and that the practices proximately caused plaintiff's injury. Plaintiff presents further evidence (via newspaper articles) that the County had notice of a pattern of unconstitutional misconduct involving its employees from other pending lawsuits filed against St. Charles County affiliates regarding assaults on prisoners. These articles, and plaintiff's allegations, suggest a pattern of deliberate indifference in failing to train or supervise Detention Center employees and / or that St. Charles County was deliberately indifferent to, or tacitly authorized, employee misconduct. Plaintiff has plead enough to survive initial review on a municipal liability claim under § 1983 against defendant St. Charles County.

## II.     Eighth Amendment Liability[4] – Individual Officer Defendants

---

[4] Plaintiff refers to both the Eighth and the Fourteenth Amendments in reference to his deliberate indifference claims in his amended complaint. ECF No. 9 at 6. The Fourteenth Amendment's Due Process Clause is used to evaluate pretrial detainee's claims of deliberate indifference, whereas the Eighth Amendment is used to evaluate claims of convicted prisoners. *See Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)); *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) ("This makes little difference as a practical matter, though: Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment.").

According to Court records, plaintiff pled guilty in this Court to two counts of possession of child pornography and one count of receipt of child pornography on September 2, 2015. *USA v. Manzo*, No. 4:14-CR-352-ERW-1 (E.D. Mo. filed Nov. 5, 2014). Plaintiff was sentenced to 70 months on each count, to be served concurrently, and subsequently, supervised release for life. While serving this sentence, plaintiff was charged in a separate case for alleged criminal offenses that occurred while he was on pretrial release in the first case. *USA v. Manzo*, No. 4:16-CR-201-ERW-1 (E.D. Mo. filed May 11, 2016). On April 24, 2017, plaintiff pled guilty in the second case to one count of receipt of child pornography and he was sentenced to a total term of 132 months imprisonment with the United States Bureau of Prisons.

It appears that the alleged May 2017 incident at the St. Charles Detention Center occurred soon after plaintiff was sentenced in his second case. Therefore, plaintiff was a convicted and sentenced federal inmate at the time of the alleged May 2017 attack, so his § 1983 claims are properly examined under the Eighth Amendment.

The Supreme Court has made it clear that the Eighth Amendment encompasses an inmate's right to be protected from harm by fellow inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). As such, prison officials must take reasonable measures to guarantee inmate safety and protect prisoners from violence by other inmates. *Berry v. Sherman*, 365 F.3d 631, 633-34 (8th Cir. 2004) (citing *Farmer*, 511 U.S. at 832-33). Such a claim has an "objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000).

"As prisons are inherently dangerous environments," not every injury suffered by a prisoner at the hands of another inmate, is grounds for constitutional liability. *Vandevender v. Sass*, 970 F.3d 972, 976 (8th Cir. 2020) (citing *Farmer*, 511 U.S. at 834). "A prison official cannot be found liable under the Eighth Amendment … unless the official knows of and disregards an excessive risk to inmate health or safety." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007) (quoting *Farmer*, 511 U.S. at 837).

"[P]rison officials violate the Eighth Amendment only when they exhibit a deliberate or callous indifference to an inmate's safety." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) (internal quotations and citation omitted). It is not enough to allege that defendants acted negligently. "[M]ere negligence does not violate the Eighth Amendment." *Standish v. Bommel*, 82 F.3d 190, 191 (8th Cir. 1996).

In general, fictitious parties may not be named as defendants in a civil action. *Phelps v. United States*, 15 F.3d 735, 739 (8th Cir. 1994). An action may proceed against a party whose name is unknown, however, if the complaint makes sufficiently specific allegations to permit the identity of the party to be ascertained after reasonable discovery. *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985).

In this case, plaintiff provides enough information on these unknown Officer defendants for them to be easily identified by Detention Center employment records.  Plaintiff alleges that Unknown Duty Officer assigned plaintiff to a cell with Green on May 20, 2017.  Plaintiff warned defendant Unknown Duty Officer that the cell assignment would not be safe for him, as Green was known to be violent.  However, Unknown Duty Officer deliberately disregarded knowledge of the risk of harm to plaintiff when he used his discretion to place plaintiff with Green.  Later, when plaintiff was being beaten by Green, plaintiff contacted defendant Unknown Control Room Officer over the cell's call box, informed him that he was being beaten, and asked for assistance.  Unknown Control Room Officer failed to intervene to protect plaintiff from further abuse.  Likewise, the many Unknown Wellness Check Officers who checked plaintiff's cell throughout the night, should have seen the blood-soaked rag on plaintiff's face with their flashlight checks.  These Officers also failed to intervene to prevent further injury to plaintiff by Green.  The Court finds that plaintiff's amended complaint sufficiently alleges that all of the unknown Officer defendants were aware of a substantial risk of harm to plaintiff and they were deliberately indifferent to that risk.  Defendant Officers did not take reasonable measures to guarantee plaintiff's safety and protect him from violence at the hands of Green.  As such, the Clerk will be directed to issue process on plaintiff's Eighth Amendment claims against Unknown Duty Officer, Unknown Control Room Officer, and Unknown Wellness Check Officers.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk of Court shall update the docket sheet to reflect that defendant "St. Charles County Department of Corrections" is no longer a named defendant in this matter, as of the filing of the amended complaint on March 15, 2021.

**IT IS FURTHER ORDERED** that the Clerk of Court shall update the docket sheet to reflect that defendant "St. Charles County" is a named defendant in this matter, as of the filing of the amended complaint on March 15, 2021.

**IT IS FURTHER ORDERED** that the Clerk of Court shall change the docket sheet spelling of defendant "Unknown Duty Officers" to "Unknown Duty Officer."

**IT IS FURTHER ORDERED** that the Clerk of Court shall change the docket sheet spelling of defendant "Unknown Officers and Control Room Officers" to "Unknown Control Room Officer."

**IT IS FURTHER ORDERED** that on the Court's own motion, the Clerk of the Court shall amend the caption of this case to read as follows:

> Marc A. Manzo, plaintiff, v. St. Charles County, et al., defendants, Case No. 4:20-CV-1527-DDN.

The parties shall use the amended caption on all future filings.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the amended complaint as to defendant St. Charles County regarding plaintiff's municipal liability claim.  Defendant St. Charles County shall be personally served by issuance of summons and service by the U.S. Marshals Service at the St. Charles County Counselor Office, 100 N. Third St., Suite 216, St. Charles, MO 63301.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the amended complaint as to defendants Unknown Duty Officer, Unknown Control Room Officer, and Unknown Wellness Check Officers, in their individual capacities, regarding plaintiff's Eighth Amendment claims.  Defendants shall be personally served by issuance of summons and service by the U.S. Marshals Service at the St. Charles County Counselor Office, 100 N. Third St., Suite 216, St. Charles, MO 63301.

**IT IS FINALLY ORDERED** that defendants shall respond to the amended complaint within the time provided by the applicable provisions of the Federal Rules of Civil Procedure.

Dated this **1st** day of June, 2021.

                                              /s/   David D. Noce
                                      DAVID D. NOCE
                                      UNITED STATES MAGISTRATE JUDGE