UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARC A. MANZO, | ) |
| Plaintiff, | ) No. 4:20-CV-1527 JSD |
| v. | ) |
| ST. CHARLES COUNTY, et al., | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant St. Charles County's ("SCC") Motion for Summary Judgment (ECF No. 103), which seeks entry of judgment in favor of SCC on Count IV of Plaintiff Marc A. Manzo's ("Manzo") First Amended Complaint (ECF No. 43). Count IV alleges municipal liability under *Monell v. N.Y. Dep't of Soc. Svcs.*, 436 U.S. 658 (1978) against SCC for failure to train, supervise, investigate complaints, and supervise.[1] This matter is fully briefed and ready for disposition. For the reasons stated here, the Court grants SCC's Motion for Summary Judgment.

---

[1] In Count I, Plaintiff alleges violation of Fourteenth Amendment rights against Defendant Unknown Duty Officer for deliberate indifference to a substantial risk of harm by placing Plaintiff in a cell with inmate Cordontez Green. In Count II, Plaintiff alleges violation of Fourteenth Amendment rights against Defendant Unknown Control Room Officer for deliberate indifference to a substantial risk of harm by not responding to Plaintiff's alleged call for help after being assaulted by Cordontez Green. In Count III, Plaintiff alleges violation of Eighth Amendment rights against Defendants Unknown Wellness Check Officers for deprivation of medical care for deliberate indifference to a serious medical condition. (ECF No. 43). Defendants filed a Motion to Dismiss Unknown Duty Officer (Count I), Unknown Control Room Officer (Count II), And Unknown Wellness Check Officers (Count III) and Memorandum in Support on the same date as this Motion for Summary Judgment. *See* ECF No. 106. The Court addresses the Motion to Dismiss in a separate memorandum and order and, therefore, this Memorandum and Order discusses only the *Monell* claim brought against SCC in Count IV of Manzo's First Amended Complaint.

## BACKGROUND

On July 8, 2016, Manzo was transferred from the Ste. Genevieve County Jail to the St. Charles County Department of Corrections ("SCCDOC") on a federal warrant, having been charged with receipt and possession of child pornography. (Defendant St. Charles County's Statement of Uncontroverted Material Facts in Support of Motion for Summary Judgment ("SUMF"), ECF No. 105, ¶¶ 1, 2) At SCCDOC, Manzo was placed in a cell in federal Unit F on July 12, 2016. (*Id*., ¶ 3) Manzo was transferred into cell F11 with inmate Cordontez Green ("Green") on May 11, 2017. (*Id*., ¶ 5) On at least two occasions, Manzo asked to be transferred to a single cell based upon the nature of the charges against him, but he continued to be housed with other inmates. (Plaintiff's Statements of Additional Material Facts ("SAF"), ECF No. 112, ¶ 120)[2]

During the evening of May 20-21, 2017, Manzo claims that he was assaulted by his bunkmate, Green, resulting in the loss of vision in his left eye. (SAF, ¶ 121) Manzo claims that, during the attack, he utilized the SCCDOC intercom system to ask officers for help, but no officers responded. (SAF, ¶ 122) Likewise, Manzo asserts that his "obvious injuries and serious medical condition" were not treated during a subsequent routine wellness check or at any time while he was at SCCDOC. (SAF, ¶¶ 123-24)

Green was detained at the SCCDOC beginning on September 30, 2016. (SUMF, ¶86) Green had been arrested for illegal possession of a weapon but had no violent charges on his record. (SUMF, ¶ 87) In the eight months prior to his altercation with Manzo in May 2017, Green was written up for two disciplinary violations for disrespect to an officer on December 6 and 7, 2016. (SUMF, ¶ 84) Green had no record of violent encounters with other inmates in the eight months

---

[2] Notably, although Manzo claims that he asked to be placed in a single cell due to the charges against him, his kiosk requests do not reflect any discussion of the charges against him prior to May 31, 2017. (ECF No. 112-10) Rather, Manzo states his conflicting bedtime schedule and privacy concerns as the basis for requesting a single cell prior to May 31, 2017. *Id*.

prior to May 2017, and he shared a cell with Manzo for nine days prior to the alleged altercation. (SUMF, ¶¶ 84-85)

Manzo's mother, Karen Hoffman, visited Manzo at SCCDOC on May 22, 2017, when he told her that he had been assaulted on "Saturday night" by Green. (SAF, ¶ 155) Hoffman then reported the incident to a supervisor. *Id*. Cpl. Thomas Lupo reported in his May 22, 2017 Shift Supervisor Report that he had been approached by Hoffman, who indicated that Manzo had been hit by his roommate and was afraid. (SAF, ¶ 156) Lupo called booking and Manzo was moved to Unit G, cell 4. *Id*.

Manzo did not request to see any medical staff related to injuries he allegedly suffered in May 2017 at any point from the time of the alleged altercation until he was released to federal custody in November 2017. (SUMF, ¶¶ 91, 94-98) Rather, two days after being transferred into a different cell unit from Green, Manzo created a complaint through the SCCDOC's kiosk system, stating that he was being extorted by a different inmate in the new unit. (SUMF, ¶¶ 78-79)[3] On May 29, 2017, Cpl. Ryan Chadwick directed SCCDOC Certified Peace Officer Julius Edwards to investigate a complaint from Manzo that he was being bullied and extorted for money under threat of exposure and violence after being transferred from federal inmate Unit F to federal inmate Unit G. (ECF No. 112-1, ¶ 4) On May 29, 2017, Officer Edwards interviewed Manzo and recommended that he be moved out of Unit G. Manzo was escorted to Unit G to recover his personal belongings and immediately transferred to Unit S. (ECF No. 112-11, ¶¶ 5-6; SUMF, ¶¶ 80-83) Notably, Officer Edwards found that there had been too long of a delay between Manzo's kiosk extortion complaint (May 24, 2017) and when the officer was asked to investigate on May 29, 2017. (SUMF,

---

[3] Although Manzo attempts to link his kiosk report to the assault by Green (*see* ECF No. 111 at 3), Manzo's kiosk complaint related only to an extortion attempt by another inmate and did not mention Green or the alleged assault. *See* ECF No. 112-10 at 8.

- 3 -

¶ 88; ECF No. 112-11, ¶ 12) Consequently, SCCDOC disciplined the officer who initially and untimely responded to Manzo's extortion complaint. (SUMF, ¶ 89)

Manzo's eye injuries were not apparent to FCI staff during his examination upon his return to FCI. (SUMF, ¶¶ 103-05) Manzo first reported the symptoms of detached retina in November 2017, six weeks after he was transferred out of SCCDOC and into FCI, and six months after the alleged assault by Green. (SUMF, ¶¶ 106-07)

## DISCUSSION

### I.   MOTION FOR SUMMARY JUDGMENT

**A.  Standard of Review**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).  The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323.  Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e);

*Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331.  The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

**B.  Count IV: *Monell* claim under 42 U.S.C. § 1983**

In Count IV of his First Amended Complaint, Manzo alleges that SCC is liable under 42 U.S.C. §1983 and *Monell v. N.Y. Dep't of Soc. Svcs.*, 436 U.S. 658 (1978) for failing to train and supervise officials, failing to investigate complaints, and for ratifying the unsafe treatment of inmates "through its customary or policy-mandated conduct of putting individuals incarcerated at SCCJ in harmful situations" (Count IV) (ECF No. 43, ¶ 58). *See* ECF No. 111 at 3-4. In its Motion for Summary Judgment, SCC states that Manzo fails to state a *Monell* claim as a matter of law either because there was no underlying constitutional violation by the individual officers or because SCC had no unconstitutional policy in place. In response, Manzo argues that this Court should deny SCC's Motion for Summary Judgment because genuine issues of material fact exist as to whether SCCDOC officials failed to adequately protect him while incarcerated. (ECF No. 111 at 4) Notably, in the summary judgment briefing, Manzo limits his entire *Monell* claim against SCC to only officers not assigning him to the custody status of Administrative Segregation

addressed in SCCDOC Policy 902. *See* ECF No. 111, *passim*; ECF No. 119 at 2. Accordingly, the Court also limits its discussion to this argument.[4]

Manzo purports to bring a claim against SCC in Count IV under 42 U.S.C. §1983, alleging municipal liability under *Monell*. "The two requisites for a § 1983 cause of action are: (1) an allegation that the conduct complained of subjected the complainant to a deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States, and (2) an allegation that the conduct complained of was done or caused to have been done by a person acting under the color of law." *Jennings v. Davis*, 476 F.2d 1271, 1275 (8th Cir. 1973) (citing *Basista v. Weir*, 340 F.2d 74, 79 (3rd Cir. 1965)). Under *Monell*, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

### 1. Unconstitutional Act by a St. Charles County Employee

Initially, SCC argues that Manzo's *Monell* claim fails as a matter of law because he has failed to provide evidence of unconstitutional acts by SCC employees. "To make the governmental entity liable for the employee's wrongdoing under 42 U.S.C. § 1983, a plaintiff needs to prove his or her 'constitutional rights were violated by an action pursuant to official municipal policy or misconduct so pervasive among non-policymaking employees of the municipality as to constitute a 'custom or usage' with the force of law.'" *Furlow v. Belmar*, 52 F.4th 393, 406 (8th Cir. 2022) (quoting *Mitchell v. Kirchmeier*, 28 F.4th 888, 899 (8th Cir. 2022) (quoting *Ware v. Jackson Cnty.*,

---

[4] Importantly, the Court also finds no basis for *Monell* liability based upon SCCDOC's officers' response to Manzo's distress calls and wellness checks or for their deliberate indifference to his medical needs for the reasons identified by SCC. *See* ECF No. 104, 119.

- 6 -

150 F.3d 873, 880 (8th Cir. 1998)). *But see Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, (2001). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Scott v. Baldwin*, 720 F.3d 1034, 1036 (8th Cir. 2013); *Davis v. Hall,* 375 F.3d 703, 712 (8th Cir. 2004). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016) (prison official must know "of and disregards a serious medical need or a substantial risk to an inmate's health or safety") (internal quotation omitted).

As stated, Manzo alleges that SCC is liable under 42 U.S.C. §1983 and *Monell* for failing to train and supervise officials, failing to investigate complaints, and for ratifying the unsafe treatment of inmates "through its customary or policy-mandated conduct of putting individuals incarcerated at SCCJ in harmful situations". (ECF No. 43, ¶ 58) Specifically, in his response to SCC's Motion for Summary Judgment, Manzo argues that SCC officials "admitted it was a violation of Defendant's policy to not segregate a high-risk/special housing inmate, showing unequivocally that officials did not 'take the reasonable measures to guarantee the safety' of Manzo." (ECF No. 111 at 7-8 (citing SAF 126-28; 130-33; 135-39; 141-45)). Manzo claims "it is

enough [to demonstrate liability] to show that Manzo was brutally assaulted by Green, and Manzo would not have suffered the resulting injuries and loss of sight in his left eye had officials followed the Department's own written policy regarding segregation." (ECF No. 111 at 8) Manzo asserts that SCC's Motion for Summary Judgment should be denied "[b]ecause the facts show that one or more officials exposed Manzo to a sufficiently substantial risk of serious harm in violating a policy designed to protect the health and safety of inmates, a genuine issue of material fact exists regarding whether Defendant's officials violated Plaintiff Manzo's constitutional rights." (ECF No. 111 at 8)

As an initial matter, the Court finds that Manzo misreads the SCC's Administrative Segregation Policy, *i.e.*, SCCDOC's Policy and Procedure ("Policy 902"). Policy 902 provides that "[i]nmates ***may*** be placed in Administrative Segregation for such reasons as; after classification/reclassification has determined their custody status to be one of the following: 1. High Risk 2. Mentally Deficient 3. Alternative Placement." (ECF No. 112-8 at 1 (emphasis added)) "High Risk" inmate is defined as "An inmate who has a history of attempted and/or successful escapes, a history of violent or deviant behavior or whose crimes, arrests, or trials have received extensive publicity." (ECF No. 112-8 at 1) Thus, contrary to Manzo's proposition, SCCDOC's Policy 902 does not mandate that any class of inmate or any particular inmate be assigned to Administrative Segregation.

Further, even if housing Manzo with another inmate would be considered a violation of Policy 902, such a violation does not *ipso facto* demonstrate a violation of Manzo's constitutional rights by the officers. Here, SCCDOC officers decided to house Manzo with another inmate but Manzo has not demonstrated that his constitutional rights were violated based upon that decision. Rather, the evidence before the Court is that Manzo was not exposed to any substantial risks to his

health or safety while at SCCDOC. Manzo has not shown a general risk to him that was ignored, nor has he shown that SCCDOC employees should have been aware of any particular risk due to his confinement with Green. In Ste. Genevive County Jail, Manzo was held in a bunk in a common area and not in a single cell. (SUMF, ¶ 1) With the exception of a two-week period from January 8, 2017 to January 22, 2017, Manzo was in Unit F from July 12, 2016 until May 22, 2017. (SUMF, ¶ 4) Green had been detained at SCCDOC since September 30, 2016 on a weapons charge, without violent charges in his record. (SUMF, ¶¶ 86-87) Green had no record of violent encounters with other inmates in the eight months leading up to the assault in May 2017. (SUMF, ¶¶ 84-85) Green had been written up on two occasions in the eight months prior to the incident, both for disrespect to an officer, a nonviolent infraction. (SUMF, ¶ 84) Green and Manzo had shared a cell, without incident, for nine days prior to the altercation. (SUMF, ¶¶ 5-6) Manzo has presented no evidence that officers were aware of conditions related to Manzo or Green that required that they not be held together. Thus, Manzo has presented no evidence from which an officer would have been on notice that Manzo and Green should not have been housed together or that sharing a cell created a substantial risk of harm to Manzo. Manzo has not articulated any employee's direct involvement in any alleged violations of Manzo's constitutional rights. Manzo cannot establish any adverse actions of any employee that resulted in a constitutional deprivation.

Further, any problems Manzo had with Green and other inmates were resolved within a reasonable amount of time from when they were reported. Indeed, Manzo was removed from Green's cell within 24 hours of when officers were notified. (SUMF, ¶ 75) Manzo has presented no evidence that he suffered any significant harm to his health while incarcerated at SCCDOC, particularly given that he refused medical attention while he was there. (SUMF, ¶¶ 75, 91-98)

In sum, Manzo has not identified how Defendants were deliberately indifferent to any substantial risk to his health or safety. Because Manzo cannot produce any evidence to support his claims that employees violated Manzo's rights, the Court grants summary judgment to SCC.[5] *See Furlow*, 52 F.4th at 406; *Mitchell*, 28 F.4th at 899; *Ware,* 150 F.3d at 880.

**2.  Existence of a Policy or Custom**

Manzo allege SCCDOC's officers' failure to transfer him to a single cell violated SCC policy. Specifically, Manzo argues that he "alleged in his First Amended Complaint that officials violated his constitutional rights and caused his injuries by assigning him to a cell with inmate Green despite the nature of his criminal charge and despite his repeated requests to be segregated." (ECF No. 111 at 9-10 (citing ECF 43, ¶¶ 9, 13, 22, 25, 58)). Manzo claims that he was regularly placed in cells with other inmates in SCCDOC, despite his allegedly "high-risk" status. (ECF No. 111 at 10) Manzo states that "while it is true that Defendants officials denied being aware of any 'unwritten policy' of failing to assist inmates charged with pedophilia or possession of child pornography or otherwise disregarding their safety (SUMF 67-68), the actions of Defendant's officials are evidence to the contrary." (ECF No. 111 at 10) In sum, Manzo claims that the failure to provide him with separate housing is "clear evidence of a widespread and persistent failure to follow the SCCDOC policy, and the constitutional violation was caused by the custom of failing to follow the segregation policy, … and there is no dispute that Manzo was injured as a result of officials' custom of failing—even refusing—to follow its own segregation policy." (ECF No. 111 at 10)

---

[5] In addition, it is likely that the claims against the officers are barred by official immunity. *See Hall v. Woodruff*, No. 24-1050 (8th Cir. Nov. 19) (holding that official immunity barred suit against Woodruff where the policy's mandate that "enemy declarations be checked, and/or other specific safeguards are taken" does not state when they must be checked or how often).

- 10 -

Under *Monell*, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell.* 436 at 691. Rather, a municipality may be liable for a correction officer's constitutional violation only if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* "Liability for a constitutional violation will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee." *Bolderson v. City of Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016) (citing *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1214 (8th Cir. 2013)).

"To trigger municipal liability based on [an] unofficial municipal custom, the custom must be so pervasive among non-policymaking employees of the municipality that it effectively has the force of law." *Id.* at 986 (citing *Ware v. Jackson Cty.*, 150 F.3d 873, 880 (8th Cir. 1998)). To establish a *Monell* custom claim, the plaintiff must show:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) (quotation omitted). However, as discussed below, Manzo fails to meet any of the prongs for *Monell* liability.

### a. Consistent Widespread Persistent Pattern of Unconstitutional Misconduct

*Monell* liability for an unofficial custom requires that the custom "be demonstrated by a continuing, widespread, and persistent pattern of unconstitutional misconduct." *Bolderson*, 840 F.3d at 986 (citing *Ware*, 150 F.3d at 880). "Although an unconstitutional custom claim cannot be

predicated on a single act, the Eighth Circuit has not determined whether some other, minimum number of incidents is required as evidence of custom." *Tirado v. City of Minneapolis*, No. 20-cv-1338 (JRT/ECW), 521 F.Supp.3d 833, 841 (D. Minn. 2021) (citations omitted). In addition to the number of incidents of misconduct, the Court must also "consider the timeframe or duration of the incidents when assessing whether the pattern was widespread." *Id.* at 842.

As previously discussed, the officers' failure to place Manzo in an individual cell was not a violation of Policy 902 or unconstitutional conduct and, therefore does not create *Monell* liability on behalf of SCC. *See Furlow*, 52 F.4th at 406; *Mitchell*, 28 F.4th at 899; *Ware,* 150 F.3d at 880. Moreover, even if the failure to put Manzo in a segregated cell was violative of Policy 902 or his constitutional rights, this single incident is insufficient to establish a municipal policy or custom under §1983. *See Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (citing *Wedemeier v. City of Ballwin,* 931 F.2d 24, 26 (8th Cir. 1991) ("Generally, an isolated incident of alleged police misconduct, … cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983."). Rather, "[t]here must exist a prior pattern of unconstitutional conduct that is so "persistent and widespread" as to have the effect and force of law." *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996). "To establish a city's liability based on its failure to prevent misconduct by employees, the plaintiff must show that city officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action." *Parrish v. Luckie,* 963 F.2d 201, 204 (8th Cir.1992); *Harris v. Pagedale,* 821 F.2d 499, 504 (8th Cir. 1987).

Manzo presents no evidence of prior similar complaints, only his own experience. *See Atkinson*, 709 F.3d at 1216 (no municipal liability where "[o]ther than the single incident at issue in this case, Atkinson has submitted no evidence of excessive force by Sanders or any other city police officer"); *Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 392 (8th Cir. 2007)

- 12 -

("So far as the record reveals, this was a one-time incident, and there is no evidence of a pattern of constitutional violations making it 'obvious' that additional training or safeguards were necessary."); *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994) ("Additionally, proof of a single incident of unconstitutional activity is not sufficient to establish liability under *Monell.*"). Even within his own experience, Manzo had one isolated incident during months of incarceration. (SUMF, ¶¶ 4, 6) Further, Manzo's requests for a single-man unit do not reference a fear for his safety, but rather state that he did not want to keep a cellmate up late, wanted "privacy for reviewing [his] case files", and because some of his personal items had been stolen. (ECF No. 112-10) *See Brewington v. Keener*, 902 F.3d 796, 802 (8th Cir. 2018) ("two incidents of excessive force—even assumed to be true—cannot be considered a pattern of widespread and pervasive unconstitutional conduct"); *Smith v. Watkins*, 159 F.3d 1137, 1138 (8th Cir. 1998) ("We recently held that two specific complaints and various rumors about an officer were not sufficient to establish a policy or custom of condoning unconstitutional conduct." (citing *Andrews v. Fowler,* 98 F.3d 1069, 1076 (8th Cir. 1996)); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) (holding that evidence of an officer brandishing his handgun during a traffic stop, committing one other incident of deadly force, and receiving two complaints of excessive force insufficient to establish a pattern of unconstitutional conduct); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (concluding that eleven incidents were insufficient to establish an unconstitutional pattern). Thus, the Court holds that Manzo's single incident is insufficient to demonstrate continuing, widespread, persistent pattern of unconstitutional misconduct, which is the first, essential element of a *Monell* claim.

  b.  **Deliberate Indifference/Tacit Authorization**

To establish *Monell* liability, a plaintiff must also prove that the municipality showed deliberate indifference to or tacitly authorized police officers' misconduct after having notice of that misconduct. *Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). "Notice is the touchstone of deliberate indifference in the context of § 1983 municipal liability." *Atkinson*, 709 F.3d at 1216.

In this case, Manzo has not provided any evidence to support a finding that former Director Larry Crawford, as the policymaking official on behalf of SCC, had notice of any custom nor that he, as the policymaking official, was deliberately indifferent to or tacitly authorized such conduct. *See Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (no *Monell* liability where "there is no evidence that the city ever had received, or had been deliberately indifferent to, complaints of violence or sexual assault on the part of an officer prior to the time Fowler raped Kristi Andrews."); *cf. Harris,* 821 F.2d at 508 (holding city liable where the "assault was similar to many other sexual violations committed by Officer Hayles and by other City police officers"). As the result, the Court finds that Count IV also fails because there is no evidence of the second prong necessary for liability under *Monell*.

c. **Motivating Force**

Finally, the Court finds that Manzo has not demonstrated that a policy or custom was the motivating force behind his alleged injury. The evidence before the Court is that Manzo did not seek medical intervention for his eye injury until November 14, 2017, approximately six weeks after he was transferred to FCI and six months after the May 2017 incident with Green. (SUMF, ¶¶ 106-07) Thus, the Court finds no evidence of a connection between any municipal custom and Manzo's injury, let alone a connection sufficient to demonstrate *Monell* liability. *Williams*, 21 F.3d at 223 (quoting *Monell*, 436 at 690) ("municipal governments can be held liable for the acts of

their employees in contravention of the civil rights of individuals only upon a showing that a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' is the motivating force behind the acts of those employees'").

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant St. Charles County's Motion for Summary Judgment (ECF No. 103) is **GRANTED**.

An appropriate Judgment is filed herewith.

Dated this 27th day of November, 2024.

                                                                                   _____
                                                                                   **JOSEPH S. DUEKER**
                                                                                   **UNITED STATES MAGISTRATE JUDGE**